The majority bases its opinion on plaintiff's uncorroborated claim that on or about August 16, 1993, while performing reassigned work duties her employer, she felt a pull in her neck as she was performing heavy lifting. Hearing Transcript, filed September 23, 1997, at 15, 22 (hereafter Tr. at __). Plaintiff produced no witnesses to the alleged incident and did not complain of pain until two weeks later. Tr. at 15, 17, 76. In a prior recorded interview, plaintiff stated that she did not notice neck problems until a few days after August 16, 1993, when she "woke up and [her] neck hurt it was stiff like .a cold in [her] neck." Tr. at 24. Plaintiff did not file an I.C. Form 18 for her alleged neck injury until April 21, 1995, almost two years later. Stipulated Records at 330 (hereafter S.R. at __). Defendant had filed a revised Form 19 on January 12, 1994, following plaintiff's unrelated claim for carpal tunnel syndrome, noting that "the employee states that she feels like she could have strained her neck on 8/17/93, 8/18/93, 8/19/93 or 8/20/93." S.R. at 288.
Dr. Fletcher's medical records reflect the first mention of any pain in plaintiff's neck on September 8, 1993. S.R. at 20. He referred plaintiff to Dr. Atassi, a neurosurgeon, for evaluation who found a mild central disc protrusion on MRI recommending conservative treatment. S.R. at 23, 03. Dr. Blue, plaintiff's family physician, found "very little objective findings" to support plaintiff's subjective complaints of pain in her neck and no disc herniation on MRI. Deposition of Dr. Blue at 29, 37 (hereafter B. Dep. at __). Dr. Blue referred plaintiff to Dr. Pare who noted in plaintiff's history on November 11, 1995, that plaintiff's onset of neck pain was related to a work accident in August 1993. S.R. at 58. On examination, he found that "the pain in her neck ha[d] pretty much disappeared" with no evidence of active radiculopathy or myelopathy upon clinical examination and review of MRI and EMG studies. Id. at 59.
Dr. Pare referred plaintiff to Barry Sadler, Ph.D., for psychological evaluation and pain management. On February 6, 1995, Dr. Sadler noted that "the pain started in August 1993, as a result of demands at the workplace according to the patient. She is not sure of the cause . . . and has listed weak muscles as her best guess as to what is wrong." S.R. at 94. Dr. Sadler also noted that after days of heavy lifting, plaintiff complained of a stiff neck and hurting shoulder. During an intake history with Jesse Leak, M.D., for physical therapy evaluation on the same date, plaintiff denied any type of trauma or accident related to her neck and other pain problems. Id. at 101. Dr. Leak noted that plaintiff realized that her "current state of mind [was] impacting her pain complaint. Id.
The undersigned is unable to find plaintiff's testimony credible regarding the occurrence of a compensable work-related neck injury. There are too many inconsistencies between plaintiff's testimony, her prior recorded statements and medical records. The medical evidence shows that plaintiff's neck pain had no sudden onset, there was no objective physical evidence for the pain, and plaintiff delayed reporting neck problems and had no witnesses to the alleged injury,
Assuming arguendo that plaintiff had credibly established a compensable work-related neck injury, she also makes the claim of secondary psychological injury. Plaintiff testified that she had no depression or anxiety, did not need psychological or psychiatric intervention and did not take psychiatric medication before the alleged accident. Tr. at 43, 48. However, plaintiff was prescribed the anti-anxiety drug, Buspar. S.R. at 32; B. Dep. at 17. Furthermore, Dr. Blue was treating plaintiff for a long history of headaches, anxiety and sleep disturbance since 1984, and on June 15, 1993, a mere two months prior to her alleged injury, describing plaintiff's "anxiety/depression, [as] still poorly controlled." S.R. at 302, 303, 309, 320, B. Dep. at 17.
The record is clear that plaintiff has long-standing posttraumatic stress disorder (PTSD) secondary to childhood sexual abuse and dysthymic disorder — depression with fatigue and possible suicidal ideation. Deposition of Sharon Windham, M.A. at 10, 12 (hereafter, W. Dep. at __). Plaintiff also suffered from serious relational problems and had a stressful relationship with a boyfriend. Tr. at 34, 37, 38; W. Dep. at 47, 49. Despite having testified that plaintiff's alleged neck injury exacerbated her psychological problems (W. Dep. at 29), Ms. Windham's contemporaneous treatment notes related that plaintiff "continues to focus on the relationship with her boyfriend Mark as the main
problem." (S.R. at 185) (emphasis added).
Dr. Rollins, a forensic psychiatrist, examined plaintiff on June 4, 1996, and concluded that, except for the unexplained swelling of plaintiff's right hand, all of plaintiff's present physical and psychiatric problems were due to her diagnoses of depression, PTSD, partner relational problems and chronic pain syndrome. S.R. at 209. Dr. Rollins asserted that plaintiff's psychiatric disorders stemmed from serious adverse experiences in childhood. S.R. at 210.
The majority does not explain why it gives greater weight to the opinions of Dr. Bregman, a psychiatrist, Dr. Melton, a rheumatologist and Ms. Windham, a Masters-level psychologist, that plaintiff's emotional conditions were aggravated by her alleged injury. Nor does it explain how plaintiff's pre-existing PTSD and depression were aggravated and exacerbated "as a natural and unavoidable consequence of the pain from the alleged neck injury." Dr. Bregman expressed no opinion on the subject, merely noting the neck pain as "secondary to job" when he records the plaintiff's history, presumably related by plaintiff. S.R. at 11. Likewise, Dr. Melton, a rheumatologist, merely notes on February 9, 1995, that Dr. Blue referred plaintiff for right "arm pain, weakness assoc. [with] on the job injury ." and that plaintiff had suffered this pain for more than one year. S.R. at 28. Again, Dr. Melton expresses no opinion regarding a work-related aggravation of a psychological illness. Furthermore, Ms. Windham never gave a direct answer that the alleged injury was the cause any aggravation of plaintiff's serious pre-existing psychiatric illnesses nor supplied any clinical explanation thereof. She just testified that plaintiff could not cope with her current conditions, of which the alleged neck injury was just one. Although plaintiff never sought psychiatric help for her well-documented serious psychological problems, this does not mean that she did not need it. Dr. Blue's notes are unequivocal that the psychiatric illness was long-standing, poorly controlled and warranted pharmaceutical intervention before any alleged injury.
Plaintiff worked outside the home for only one year before her alleged injury. On March 29, 1995, Dr. Blue's physician's assistant, Deborah Moellenberndt, who has no stake in the outcome of this matter, wrote to defendant-employer's nurse, Terry Salinski, LPN, that plaintiff's traumatic divorce forced her return to the workforce after ten years and that "[t]he extreme and overwhelming stress and anxiety of leaving her family, having to work at a job that she is just ill-prepared to do has caused her extreme physical pain." S.R. at 288. Furthermore, in Ms. Windham's psychological field notes plaintiff's sessions relate plaintiff's statement that she (plaintiff) "don't' want to go back to work 2 yrs, 5 yrs ever." S.R. at 64. (Emphasis in record.)
To compensate psychological illness under the Workers' Compensation Act, it must be caused by a work-related accident or injury. Brewington v. Rigsbee Auto Parts, 69 N.C. App. 168,316 S.E.2d 336 (1984). A "triggering" event for a psychiatric condition, without more, will not establish causation. Id.
Plaintiff's life stressors and psychiatric illnesses pre-existed the alleged accident, continuing unabated with no evidence to the contrary beyond a Masters-level psychologist's imprecise testimony. In contrast, Dr. Rollins, a highly experienced board-certified forensic psychiatrist, testified that plaintiff's major psychiatric illness pre-existed apart from any [alleged] workplace injury. Rollins Deposition at 17, 18. The undersigned does not dispute that plaintiff suffers from serious, significant psychological and related physical problems. The greater weight of the evidence, however, does not show that there was a work-related injury by accident to plaintiff's neck on or about August 16, 1993, which caused or significantly aggravated plaintiff's psychological problems
This 29th day of May 1998.
 S/ _______________ DIANNE C. SELLERS COMMISSIONER